UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| KEVIN FAILE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CV-00055-JAW |
| | ) | |
| STATE OF MAINE, et als., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION**

Kevin Faile has commenced a civil action against the State of Maine Department of Health and Human Services, the Riverview Psychiatric Center, the Maine Workers' Compensation Division, and the Maine Attorney General's Office. Defendants have filed a motion to dismiss, which the Court referred for report and recommended decision. For reasons that follow, I recommend that the Court grant the motion.

**THE PLEADINGS**

Faile's pleadings are spread across four filings and include an original complaint (ECF No. 1), an amended complaint (ECF No. 7), and further supplemental pleadings and amendments (ECF Nos. 9 & 12). In his pleadings, Faile sets forth that he was employed by the Department of Health and Human Services at its Riverview Psychiatric Center in Augusta, formerly the Augusta Mental Health Institution. It is not clear when Faile commenced employment with the Department, but it appears he worked for the Department as early as 2003. He received a notice of terminated on August 26, 2009. From the pleadings and attachments, it emerges that Faile was employed as a mental health worker and that one of his primary duties was to use force to restrain patients at the Center, when necessary. In the performance of this occupation, Faile

suffered multiple workplace injuries, including what are described as severe injuries to his right shoulder, back, and neck.  Faile also alleges that in April 2010, during the course of treatment with an unspecified provider, he experienced paralysis from the neck down following a spinal injection and underwent spinal surgery to address a hemorrhage.  In addition, because of what he describes as exposure to "lethal environments," Faile developed post-traumatic stress disorder, anxiety, and depression.  (ECF No. 1 at 2.)  According to Faile, these injuries have developed into disabilities and they have reached that level of severity because the Department required him to work despite reports of work injuries and because he has been denied adequate medical treatment in the context of his pursuit of workers' compensation.

Faile's core complaint involves a claim of disability discrimination.  In addition, Faile complains of the destruction of his reputation, the destruction of evidence, being stalked by investigators with video equipment, the refusal to ever prosecute a patient for making violent assaults or death threats, the refusal to pay his treatment providers, the harassment of his treatment providers, the denial of an advocate during workers' compensation proceedings, and the destruction of his career and health.  As Faile describes it, his life has been destroyed "because the State of Maine wouldn't treat [his] injuries for years, forcing [him] to fight violent lethal inmates."  (Id. at 2.)  Faile's termination occurred while he was out in connection with an approved surgery.  In addition to other relief, Faile wants the termination removed from his work file, a return to his file of allegedly destroyed documents, and recompense for the fact that "state employees have destroyed [his] life from workers comp, their attorney, personnel from human resources, and officials at the Attorney General's Office."  (Id. at 3.)

In his first supplemental pleading, Faile states that he was terminated, supposedly, because he declined two alternative job transfers and because he failed to update paperwork

associated with his leave.  Faile says that the job offers came after the Department had already

resolved to terminate him and that he did fill out leave-related paperwork on two occasions.  He

also maintains that he was refused accommodation for his disabilities.  (ECF No. 7 at 2.)  Faile

explains that this was not the only time he was terminated by the Department, alleging that the

Department also let him go in 2003 while he was on approved medical leave.  Then, as in 2009,

he says, his termination notice arrived while he was awaiting MRI reports.  (Id. at 3.)

Faile says that in 2008 he suffered a significant injury and that his doctors stated he had

no work capacity, but that he was forced to return to work "out of financial desperation."  (Id. at

4.)  Faile says he was offered a sedentary job in 2008 after filling out "ADA paperwork" and that

he still suffered from patient activity causing him physical and psychological harm.  When he

eventually received workers' compensation and a related approval for surgery, he says that while

he was out he "was harassed, videotaped, and set up with the assistance of Return to Work

employees with a job nobody knew about" and his pay was cut in half.  (Id.)  From his

perspective, the State, the Department, the Center, and the Worker Compensation Division "have

deliberately caused further damage to me in an effort to discourage me from trying to get the

medical help I so desperately need."  (Id. at 5.)

Faile attaches to his amended complaint multiple exhibits, including various letters

exchanged between himself and state personnel concerning both his 2003 termination and his

2009 termination.  (ECF No. 7-1.)  Faile has attached additional pleadings of his own to the end

of these exhibits.  From these additional pleadings, it is apparent that Faile is really seeking

systemic change in the way the Department runs the Riverview Psychiatric Center, the way the

Division runs the workers' compensation system, and the way the State manages its "Return to

Work" program for state employees on medical leave.  He asserts that the case was "made over

years and years" and that nobody listened or cared within the Department.  He states that there are others who have experienced "discrimination" with him and that some of them are no longer with us, whether due to murder, suicide, or broken hearts.  (ECF No. 7-1, PageID # 35.)  He describes a career of fighting the state's most violent citizens while also working with the most vulnerable, something he likens to being "part of a silent military on a front line most never realize even exists."  (Id., PageID # 36.)   He argues that he and others like him do the State a vital service and that "[t]he very least the State can do is get us treatment for our injuries."  (Id., PageID # 37.)

In his amended pleading (ECF No. 9), Faile asserts a claim of whistleblower retaliation under the Maine Whistleblower Protection Act (MWPA).  He maintains that his 2009 termination and other adverse actions arose because of his agitation and complaint activity related to his concerns.  He alleges that he complained (1) about policies and practices in Augusta that led to a mental health worker almost being killed by an "inmate";  (2) about the way that contract medical providers "refused to diagnose or treat my workplace injuries";  (3) that a workers' compensation case manager was a liar and untrustworthy;  (4) that "state workers were being maimed by the workers comp system";  (5) that his employer was failing to listen to its own "207 examiner" and failed to pay for his MRI;  (6) that he had worked injured for years;  (7) that he had to pay out-of-pocket for work-related medications;  (8) that workers' compensation employees would "pick and choose and edit Dr. Notes";  (9) that the employer did nothing to prevent such treatment by workers' compensation;  (10) that assaults by "patients/inmates" went unreported, which created a violent hostile work environment;  (11)  that if he attempted to charge a patient with assault, no  one would press charges;  (12) that death threats went unreported to law enforcement;  (13) that "often extremely disruptive and highly

assaultive pts. were just discharged because of their dangerousness";  and (14) that his participation in a behavior response committee and his work as an instructor in non-abusive psychological and physical intervention was held against him because he was "an open critic of how the hospital and workers comp dealt with injured workers," complaining openly to all hospital staff and allowing staff to air any complaint they had over safety.  Faile explains that all of his complaint activity was designed to make the workplace safer for both staff and patients and to expose the way that the hospital's human resources department and worker compensation staff "team up on an employee to deny them diagnosis and treatment for workplace injuries." (Id.)  In this particular pleading, Faile inserts in his caption as additional defendants the Maine Department of Administrative and Financial Services and the Maine Bureau of Human Resources, but he does not recite any particularized allegations concerning either.  Attachments to his supplemental pleadings  reflect that the Department of Administrative and Financial Services is within the Bureau of Human Resources, Division of Employee Health and Benefits and that personnel of this department participated in administering a state employee "Return to Work" program in connection with Faile's medical leave in August and September 2009.  (ECF No. 7-1, PageID ## 20-21.)

## SUMMARY DISMISSAL STANDARDS

Rule 12 of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for, among other things, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction";  (2) "a short and plain statement of the claim showing that the pleader is entitled to relief";  and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a).  In deciding a motion to dismiss, the court accepts as true the factual

allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "A claim is facially plausible if supported by 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). A plaintiff's complaint need not provide an exhaustive factual account, only "a short and plain statement." However, the allegations must be sufficient to identify the manner by which the defendant subjected the plaintiff to harm and the harm alleged must be one for which the law affords a remedy. Iqbal, 129 S. Ct. at 1949.

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In some circumstances, if it appears that a pro litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings, all in order to avoid a scenario in which a pro se plaintiff's claims are summarily dismissed with prejudice based on a failure to plead sufficient facts. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (unpublished).

Pursuant to Rule 12(b)(6), a defendant may also advance a statute of limitation defense when the passage of time prevents a plaintiff from stating "a claim upon which relief can be

6

granted." However, the facts supporting the defense are supposed to be clear on the face of the plaintiff's pleadings. Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009). If the movant introduces documents outside the pleadings to validate its defense, the court may only consider the extraneous material by converting the motion to dismiss into a motion for summary judgment, and it may only do that if it gives the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Fed. R. Civ. P. 12(d)). An exception is recognized, however, which permits a court to consider documents that are not reasonably subject to challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into or sufficiently referred to in the complaint. Greenier v. Pace Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). Moreover, the idea that non-movants must receive advance notice of an intention to convert a motion to dismiss into a motion for summary judgment is something of a misnomer, for when the movant attaches matters outside the pleadings and the non-movant has received those materials without challenging their accuracy and without responding to them, the court is not really obliged to afford "express notice" of an intention to convert the motion. Nor is the court required to provide any additional time to respond beyond the time afforded in connection with the original motion. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60-61 (1st Cir 2000).

## DISCUSSION

Defendants request that the Court dismiss Faile's action for failure to state a claim. Their operative motion is an amended motion to dismiss (ECF No. 16), which seeks to account for all of Faile's pleadings. In between Defendant's original motion (ECF No. 10) and their amended

motion, Faile submitted what will be construed as his brief in opposition (ECF No. 12).  He did not file any response to the amended motion.

Defendants identify Faile's causes of action as follows:  (1) disability discrimination under the Americans with Disabilities Act;  (2) a parallel claim under the Maine Human Rights Act;  and (3) a whistleblower retaliation claim under the Maine Whistleblower Protection Act. Defendants argue that Faile has failed to state a claim against the Department and/or Riverview Psychiatric Center (Mot. to Dismiss at 4-7, ECF No. 16), failed to state a claim against the Office of the Attorney General or the State Workers' Compensation Division (Mot. at 7-9), failed to state a whistleblower claim (Mot. at 9-12), and should not be granted leave to add party defendants because he has not articulated any plausible claim against the same (Mot. at 12). These arguments are addressed in sequence, focusing first on the Department of Health and Human Services and Riverview as the relevant defendants, then on the Workers' Compensation Division and the Office of the Attorney General, then on the proposed new defendants.

## I.   The Employer Defendants

From the pleadings it is evident that only the Department of Health and Human Services and Riverview Psychiatric Center could qualify as Faile's employer for purposes of an employment discrimination claim.  For the reasons that follow, Faile's allegations do not state a claim for which relief can be granted against the Department or the Center.

### A.   The ADA Disability Discrimination Claim

Defendants assert that Faile's claim cannot proceed under the ADA to the extent he may seek money damages because the State of Maine has Eleventh Amendment immunity when it comes to claims for money damages arising under Title I of the ADA.  (Mot. at 4.)  Defendants are correct.  In Board of Trustees of the University of Alabama v. Garrett, the Supreme Court

held that the states may invoke sovereign immunity when faced with Title I claims for money damages.  121 S. Ct. 955, 968 & n.9 (2001).  "The Eleventh Amendment, however, does not confer upon the states a total immunity against suit."  State Police for Automatic Retirement Ass'n v. DiFava, 317 F.3d 6, 12 (1st Cir. 2003).  The Eleventh Amendment does not prevent private actions seeking injunctive relief against a state.  Id. (citing Ex Parte Young, 209 U.S. 123 (1908)).  It is evident from his complaint that Faile primarily requests injunctive remedies, such as "mak[ing] the State of Maine stop the discrimination based on disabilities they created [and] giv[ing] me the treatment I need for those injuries so I can get back to work and my life."  (ECF No. 1 at 3.)  Faile also seeks "help to stop this outrageous discrimination, [to] allow me to take wrongful termination out of my work file, put back in my file what should be there and stop this violence."  (Id.)

Defendants recognize that this is the case, but argue that the claim for injunctive relief is otherwise barred on pleading grounds.  They contend that Faile has not alleged and cannot plausibly allege that he could perform the essential functions of his job, with or without reasonable accommodation.  (Mot. at 5, citing Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011), for the elements of an ADA discrimination claim).  According to Defendants, Faile's allegations and the documents attached to his pleadings "establish that he had and continues to have no work capacity."  (Mot. at 5.)  In this regard, Defendants cite Faile's August 2009 request for accommodation in which he reported "no work capacity or light duty capacity to date per doctor's order until all restrictions are fully known." (ECF No. 7-1, PageID # 23.)  They also cite a March 31, 2011, decision of the Workers' Compensation Board, to the effect that Faile has been totally incapacitated since a 2006 work-related injury.  (Mot. at 6.)  This is a puzzling assertion, because the decision says that Faile

returned to work following four months of light-duty work and then experienced additional work-related injuries in February 2007 and November 2007.  (ECF No. 16-1 at 4-5.)  The decision finds that Faile has not worked since November 2008.  (Id. at 5.)  The decision also relates that "the parties signed a consent agreement establishing that Mr. Faile was totally incapacitated on April 20, 2009."  (Id. at 6.)  The essence of the workers compensation dispute appears to be that the State acknowledged a continuing incapacity resulting from a 2006 injury, but was unwilling to concede that Faile's incapacity remained total; whereas Faile "claim[ed] to be totally incapacitated as a result of his injuries and resulting complications."  (Id. at 10.)  The Board's finding was that "Faile is currently totally incapacitated, [but] expected to improve" (id. at 11), and that the 2006 work-related injury "remains responsible for Mr. Faile's ongoing incapacity" (id.  at 12), which is not the same as saying that Faile has been totally incapacitated since 2006.

Lastly, Defendants cite Faile's sworn testimony before the Board, which they cite to the effect that Faile denied the ability to return to work, even in the alternative, light-duty office jobs offered to him in 2009, one before and one after his receipt of the August 2009 termination notice.  (Mot. at 6.)  The hearing transcript is generally supportive, insofar as Faile testified that he could not have performed either of the jobs that were offered to him at that time and lacked the capacity for full-time, light-duty work.  (Hr'g Tr. at 84, ECF No. 16-2, PageID # 166.)

Defendants have a valid legal argument.  A disability discrimination claim requires proof that despite the existence of a disability, an employee retains the ability to perform the essential functions of his job, either with or without reasonable accommodation.  Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002).  To qualify for protection under the ADA, an employee must be a "qualified individual."  42 U.S.C. § 12112(a) ("No covered entity shall discriminate against

a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, . . .").  A qualified individual "means an individual

who, with or without reasonable accommodation, can perform the essential functions of the

employment position that such individual holds or desires."  Id. § 12111(8).  "An employer has

no duty to modify an essential function of a job."  Calef v. Gillette Co., 322 F.3d 75, 86 n.8 (1st

Cir. 2003).  "If the plaintiff, with or without reasonable accommodation, cannot perform an

essential function of the job, then he is not a qualified individual and there is no duty to

accommodate."  Id.

Faile does not allege that he has the ability to perform any occupation, with or without

reasonable accommodation.  Nor can I plausibly infer from his allegations or from his attached

exhibits or from the record of the workers compensation proceeding that there was a reasonable

accommodation that the Department of Health and Human Services could have provided to Faile

to prevent his termination.  Faile's allegations include the assertion that he should have been

given more leeway to take days off when his doctors indicated he should, but this allegation is

offered to explain the genesis of his injuries, that he was "forced to work injured in a lethal

environment without proper diagnosis or treatment for reported workplace injuries."  (ECF No.

12 at 4.)  This relationship between Faile's need for leave or treatment, on the one hand, and his

disability, on the other, does not change the nature of the legal obstacle he faces, which is that he

fails to allege or plausibly suggest that he was a qualified individual at the time of his

termination.  Whoever may be responsible for Faile's injuries and for his continuation in the

mental health worker position despite significant injuries, based on his own pleadings Faile was

not capable of performing his job, with or without reasonable accommodation, as of the date of

his termination.  Additionally, as of the date of his termination, Faile had been on leave for a

protracted period and gave no indication of having the work capacity to return to his actual position or even a different position.  As Defendants observe, indefinite leave is not a reasonable accommodation.  Fiumara v. Pres. & Fellows of Harvard Coll., 327 Fed. Appx. 212, 213 (1st Cir. 2009).  In effect, Faile pleads himself out of court on his discrimination theory because in addition to failing to allege the existence of a reasonable accommodation he affirmatively alleges facts indicating the absence of a work capacity.

###### B.      The MHRA Disability Discrimination Claim and MWPA Claim

Defendant's motion does not focus on the Maine Human Rights Act insofar as any disability discrimination claim is concerned, only insofar as a whistleblower retaliation claim is concerned.  However, as far as disability discrimination is concerned, the MHRA parallels the ADA.  It provides that a "covered entity may not discriminate against a qualified individual with a disability because of the disability of the individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment."  5 M.R.S.A. § 4572(2).  In the employment context, a "qualified individual with a disability" is defined as "an individual with a physical or mental disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that the individual holds or desires."  Id. § 4553(8-D).  For reasons explained in the preceding section, Faile fails to state a claim to being a qualified individual.

Defendants argue that the MWPA claim is time barred because Faile did not include it in his administrative charge and, consequently, a two-year statute of limitation applies.  (Mot. at 10.)  Claims of discrimination that are advanced under the MHRA/MWPA must be commenced within two years of the act of unlawful discrimination unless a later filing date is allowed by

virtue of the delay occasioned by an administrative process.  5 M.R.S. §§ 4613(2)(C), 4622(1).

Defendants attach a copy of Faile's administrative charge of discrimination, which reflects that

Faile did not assert his whistleblower theories in the allegations associated with his

administrative charge.  (ECF No. 16-3.)  Consequently, the two-year limitation period applies.

Faile filed his complaint in February 2012, more than two years after his termination in

November 2009.  For this reason, his whistleblower retaliation claim is time barred.

## II.    The Office of the Attorney General and the Workers' Compensation Division

Defendants assert that the Office of the Attorney General and the Workers'

Compensation Division are not appropriate defendants on any of the employment claims

identified in Faile's pleadings because they were not employers ("covered entities") as far as

Faile is concerned.  (Mot. at 7-8. )  In response, Faile concedes that the Office of the Attorney

General should not have been added to the list of defendants.  (ECF No. 12 at 1.)  Faile does not

concede the point with regard to the Workers' Compensation Division, but the point is beyond

dispute.  Faile has not included in his pleadings a viable employment discrimination claim

against either of these two defendants.

Defendants also note that if there is a separate tort claim contained in Faile's pleadings,

the action cannot proceed because the Maine Tort Claims Act grants the State immunity and

because it also required Faile to serve a notice of claim, something that Faile does not allege

doing.  (Mot. at 9, citing 14 M.R.S. §§ 8103, 8107.)  Faile does not respond in any meaningful

way to these arguments, either by identifying whether he means to allege any such claim or by

suggesting that he substantially complied with the notice requirement.  It is clear from the

pleadings that Faile believes that the process he has been through in terms of seeking workers'

compensation benefits has not been overly solicitous of his welfare and was "set up" in an unfair

13

and misleading manner.  (ECF No. 12 at 2.)  However, his allegations do not reveal a violation of the United States Constitution or federal law.  Nor does a viable state law tort theory leap off the pages of Faile's pleadings.  In any event, because neither of these defendants is properly subject to a federal claim within this Court's federal question jurisdiction, any theoretical, supplemental state law tort claims against these defendants are most effectively addressed by an order dismissing the same, without prejudice.  See 28 U.S.C. § 1367(c);  Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.").

## III.    The Proposed New Defendants

Defendants object to the addition of any new defendants, observing that the allegations do not state any plausible claim for which relief can be granted against the Department of Administrative and Financial Services or the Bureau of Human Resources.  This amendment should be stricken because the complaint fails to articulate any viable claim against either proposed defendant along the lines outlined in the immediately preceding section of this discussion.

### CONCLUSION

Faile's allegations describe an employment scenario in which certain state workers are unnecessarily injured while performing a dangerous but necessary state function.  Taken as true for purposes of deciding Defendants' Motion to Dismiss, Faile's allegations support an inference that he suffered unnecessary injuries or exacerbation of existing injuries because of administrative negligence or indifference and has lost the capacity for gainful employment as a result.  Faile wants this Court to remedy the problem.  However, in the absence of a violation of

14

federal law, a federal court does not have the authority to review the State's performance as employer, let alone oversee the State's delivery of public services or performance of public duties within the Center or its administration of the workers' compensation system and return to work program.  For that reason, I recommend that the Court GRANT Defendants' Motion (ECF No. 16) and dismiss the federal and state employment-related claims with prejudice and any theoretical state-law tort theories without prejudice.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

August 6, 2012                            /s/ Margaret J. Kravchuk
                                          U.S. Magistrate Judge